| Tab No. | Docket No. | Filing/ Entry Date | Document Name |
|---|---|---|---|
| 314. | | 04/13/2004 | Business Summary from C. Muhlhauser dated 03/19/03 from Bright Dep. Exh. 31 (EnerSys Trial Exh. 250) |
| 315. | | 04/13/2004 | Debtors' Corrected Supplemental Objections and Responses to EnerSys' Interrogatory 11 w/attachments dated 01/19/04 from Cole Dep. Exh. 5 (EnerSys Trial Exh. 253) |
| 316. | | 04/13/2004 | Exide website page dated 12/10/03 Bates numbered E3-12544-12546 (EnerSys Trial Exh. 257) |
| 317. | | 04/13/2004 | Joint Plan of Reorganization dated 2/27/04 (EnerSys Trial Exh. 271) |
| 318. | | 04/13/2004 | Disclosure Statement for Joint Plan of Reorganization dated 2/27/04 (EnerSys Trial Exh. 272) |
| 319. | | 04/13/2004 | 1992 Amended Tax Return and Supporting Schedules for EC Acquisition, Inc. from McPherson Dep. Exh. 1 (EnerSys Trial Exh. 273) |
| 320. | | 04/13/2004 | 1992 Tax Return and Supporting Schedules of EC Acquisition, Inc. from McPherson Dep. Exh. 2 (EnerSys Trial Exh. 274) |
| 321. | | 04/13/2004 | Exide Corp. Balance Sheet dated 7/28/92 from McPherson Dep. Exh. 3 (EnerSys Trial Exh. 275) |
| 322. | | 04/13/2004 | Champion battery photo (EnerSys Trial Exh. 276) |

| Tab No. | Docket No. | Filing/ Entry Date | Document Name |
|---|---|---|---|
| 323. | | 04/13/2004 | Dr. Keegan Pilot Survey (EnerSys Trial Exh. 278) |
| 324. | | 04/13/2004 | GNB Study dated 1/2000 (EnerSys Trial Exh. 279) |
| 325. | | 04/13/2004 | PR Newswire re: Exide Technologies dated 12/20/01 (EnerSys Trial Exh. 284) |
| 326. | | 04/13/2004 | Article from RoyaltySource.com dated 3/26/04 (EnerSys Trial Exh. 285) |
| 327. | | 04/13/2004 | Excerpt from Accounting Principles Relating to Valuation (pp. 89-91) (EnerSys Trial Exh. 286) |
| 328. | | 04/13/2004 | Excerpt from Defining Intangible Assets and Intellectual Property (pp. 41-47) (EnerSys Trial Exh. 287) |
| 329. | | 04/13/2004 | Volume 1 of the June 10, 1991 Exide Corp. sale of Industrial Battery Division assets to Yuasa Battery, Inc. Bates numbered E-3-4970-E3-5658 (Exide Trial Exhibit 1A) |
| 330. | | 04/13/2004 | Volume 2 of the June 10, 1991 Exide Corp. sale of Industrial Battery Division assets to Yuasa Battery, Inc. Bates numbered E3-5659-E3-6250 (Exide Trial Exhibit 1B) |

| Tab No. | Docket No. | Filing/ Entry Date | Document Name |
|---|---|---|---|
| 331. | | 04/13/2004 | Form S-1 Registration Statement for Yuasa, Inc. dated 3/30/98 (Exide Trial Exhibit 36) |
| 332. | | 04/13/2004 | Yuasa Offering Memorandum dated March 2000 (Exide Trial Exhibit 37) |
| 333. | | 04/13/2004 | Letter from Robert Lutz to Michael Ehlerman dated 6/9/00 (Exide Trial Exhibit 52) |
| 334. | | 04/13/2004 | Letter from Michael Ehlerman to Robert Lutz dated 6/13/00 (Exide Trial Exhibit 53) |
| 335. | | 04/13/2004 | Expert Report of Scott Phillips w/ attachments (Exide Trial Exhibit 94) |
| 336. | | 04/13/2004 | 2003 Annual Report of Toyota Industries Corp. (Exide Trial Exhibit 95) |
| 337. | 4202 | 04/13/2004 | Statement of the Official Committee of Unsecured Creditors Regarding Trademark License Litigation with EnerSys, Inc. |
| 338. | 4340 | 04/21/2004 | Memorandum Order (Findings of Fact, Conclusions of Law) Relating to Confirmation of the Joint Plan of Reorganization of the Official Committee of Unsecured Creditors and the Debtors |
| 339. | 4357 | 04/26/2004 | Limited Objection to Technical Amendments of Joint Plan of Reorganization of the Official Committee of Unsecured Creditors and the Debtors |

SL1 627026v1/008444.00325

| Tab No. | Docket No. | Filing/ Entry Date | Document Name |
|---|---|---|---|
| 340. | 4368 | 04/27/2004 | Chapter 11 Plan of Reorganization Amended Technical Amendment to (I) Joint Plan of Reorganization of the Official Committee of Unsecured Creditors and the Debtors and (II) Plan Supplement for Joint Plan of Reorganization of the Official Committee of Unsecured Creditors and the Debtors |
| 341. | 5377 | 04/03/2006 | Opinion by Kevin J. Carey, United States Bankruptcy Judge |
| 342. | 5378 | 04/03/2006 | Order Granting Motion to Reject Notice to Reject the Trademark and Trade Name License Agreement Between Exide Corporation and Yuasa Battery (America), Inc. |
| 343. | 5385 | 04/11/2006 | Notice of Appeal of EnerSys Delaware, Inc. f/k/a EnerSys, Inc. of Order Granting Debtors' Motion to Reject |
| 344. | 5387 | 04/11/2006 | Motion of EnerSys Delaware, Inc. f/k/a EnerSys, Inc. for an Order Expediting Time for the Hearing to Consider Its for a Stay Pending Appeal of the Order Granting Debtors' Motion to Reject |
| 345. | 5388 | 04/11/2006 | Emergency Motion of EnerSys Delaware, Inc. f/k/a EnerSys, Inc. for Stay Pending Appeal of the Order Granting Debtors' Motion to Reject |
| 346. | 5390 | 04/13/2006 | Objection of Exide to Motion of EnerSys Delaware, Inc. f/k/a EnerSys, Inc. for an Order Expediting Time for the Hearing to Consider Its Motion for a Stay Pending Appeal of the Order Granting Debtors' Motion to Reject |
| 347. | 5391 | 04/14/2006 | Order Granting EnerSys Delaware, Inc. f/k/a EnerSys, Inc. for an Order Expediting Time for the Hearing to Consider its Stay Pending Appeal of the Order Granting Debtors' Motion to Reject |

| Tab No. | Docket No. | Filing/ Entry Date | Document Name |
|---|---|---|---|
| 348. | 5411 | 04/20/2006 | Objection to Emergency Motion of EnerSys Delaware, Inc. f/k/a EnerSys, Inc. for a Stay Pending Appeal of the Order Granting Debtors Motion to Reject Filed by Exide |

## II. Statement Of Issues On Appeal.

1. Did the Bankruptcy Court err in concluding that the Agreement is executory?

2. Did the Bankruptcy Court err in concluding that the Agreement has not been substantially performed by either EnerSys or Exide notwithstanding the evidence that, pursuant to the Agreement, in 1991 Exide transferred an entire industrial battery business and EnerSys paid Exide over $130.0 million, representing the full consideration for the business?

3. Did the Bankruptcy Court err in concluding that the Agreement has not been substantially performed by either EnerSys or Exide without ever considering the ratio of performance rendered by each to the performance remaining due from each?

4. Did the Bankruptcy Court err in concluding that material obligations of each of EnerSys and Exide remain outstanding without first determining whether either EnerSys or Exide had substantially performed?

5. Did the Bankruptcy Court err in concluding that both EnerSys and Exide have remaining material obligations under the Agreement?

6. Did the Bankruptcy Court err in concluding that Exide has remaining material obligations under the Agreement without considering the fact that termination by Exide of its obligations under the Agreements (including the Trademark License) would impose a substantial forfeiture on EnerSys?

44

7. Did the Bankruptcy Court err in concluding that Section 13.6 of the Asset Purchase Agreement does not preclude both EnerSys and Exide from terminating their performance under the Agreement in the event of breach by the other and, so, does not preclude a finding that any of the remaining obligations of both EnerSys and Exide are material?'

8. Did the Bankruptcy Court err in concluding that the Use Restriction and the Quality Standards provisions of the Trademark License were remaining obligations rather than conditions or, if obligations, were material in the context of the Agreement as an integrated whole?

9. Did the Bankruptcy Court err in concluding that Exide's lack of attention to the Quality Standard requirement after the closing in 1991 did not effect a waiver of compliance by EnerSys with the Quality Standard provision of the Trademark License, thus precluding any finding that the Quality Standard provision is a remaining material obligation of EnerSys?

10. Did the Bankruptcy Court err in concluding that the Quality Standard provision of the Trademark License was a remaining material obligation without considering whether Exide's lack of attention to the Quality Standard requirement, even if not constituting waiver, was evidence that Exide did not consider the Quality Standard provision to be material?

11. Did the Bankruptcy Court err in concluding that Paragraph 8 of the Trademark License does not preclude a finding that the Quality Standard and Use Restriction provisions are remaining material obligations of EnerSys notwithstanding the fact that Paragraph 8 of the Trademark License limits the remedies for breach by EnerSys of such provisions to termination of the trademark license?

12. Did the Bankruptcy Court err in concluding that breach by EnerSys of any of its remaining obligations other than the Quality Standard and Use Restriction provisions, are

45

material without considering that, pursuant to Paragraph 8 of the Trademark License, only breach of the Quality Standard and Use Restriction provisions can trigger termination of the Trademark License.

13. Did the Bankruptcy Court err in concluding that the evidence submitted by Exide established that Exide had any remaining obligations to EnerSys under the Pension Plan Obligations or that, to the extent any such obligations remain, they are material in the context of the Agreement as an integrated whole?

14. Did the Bankruptcy Court err in concluding that the Registration Obligation is a remaining material obligation of Exide in the context of the Agreement as an integrated whole?

15. Did the Bankruptcy Court err in concluding that the Indemnification obligations of EnerSys and Exide are remaining material obligations of both EnerSys and Exide in the context of the Agreement as an integrated whole?

16. Did the Bankruptcy Court err in concluding that the Further Assurances Obligations of EnerSys and Exide are remaining material obligations of both EnerSys and Exide in the context of the Agreement as an integrated whole?

17. Did the Bankruptcy Court err in concluding that the Agreement, including the Trademark License, did not evidence a closed sale and, so, could remain executory?

18. Did the Bankruptcy Court err in applying an incorrect standard to evaluate whether particular remaining obligations were material in the context of the Agreement as an integrated whole?

19. Did the Bankruptcy Court err in concluding that Exide's failure to seek rejection of all of the agreements executed in connection with the Agreement did not preclude rejection of the Agreement?

20. Did the Bankruptcy Court err in concluding that rejection of the Agreement effects a termination of the Agreement, including the Trademark License, and divests EnerSys of any rights under the Agreement, including the Trademark License?

21. Did the Bankruptcy Court err in concluding that a negative inference supporting the conclusion that rejection of a trademark license terminates the license should be drawn from the failure of Congress to include trademark licenses within the protections afforded by 11 U.S.C. §365(n)?

22. Did the Bankruptcy Court err in concluding that trademark licenses are unique and, so, terminate upon rejection even though other types of licenses do not terminate upon rejection?

23. Did the Bankruptcy Court err in concluding that the fact that rejection of a trademark license might not benefit a debtor/licensor unless rejection terminates the license supports a finding that rejection does cause termination?

24. Did the Bankruptcy Court err in concluding, based on the evidentiary record and admitted trial testimony, that Exide's decision to reject the Agreement satisfied the business judgment test applicable to a bankrupt estate?

25. Did the Bankruptcy Court err in admitting and relying upon the speculative and unsupported trial testimony of certain Exide employees, who were also not qualified to lay a proper foundation, in concluding that Exide will benefit from rejection, pursuant to the business judgment test applicable to a bankrupt estate?

26. Did the Bankruptcy Court err in admitting and relying upon Exide Exhibits 155-157 (the forecast sales analyses) under the business records exception to hearsay evidence, notwithstanding that such Exhibits were created on the eve of trial (and after the decision to reject was made) for the sole purpose of supporting Exide's litigation theory at the direction of

its counsel, in order to show that Exide will benefit from rejection, pursuant to the business judgment test applicable to a bankrupt estate?

27. Did the Bankruptcy Court err in ignoring evidence presented at trial by EnerSys that Exide's true motivation in rejecting the Agreement was driven by improper motive, bad faith and anti-competitive reasons?

28. Did the Bankruptcy Court err in admitting and relying on hearsay testimony at trial by certain Exide witnesses regarding what Exide's customers are allegedly saying about confusion in the marketplace? [*See* 3/3/2004 Trans. at 75-78].

29. Did the Bankruptcy Court err in relying on Exide's bench memoranda regarding the issue of quality control as an ongoing material obligation? [*See* Docket Entry No. 3765; 3/4/2004 Trans. at 19-20].

30. Did the Bankruptcy Court err in admitting and relying on the testimony of Exide witnesses regarding the discussions held during a telephone conference call relating to the decision to reject, after the witnesses had previously refused to answer questions about the discussion during their depositions on the basis of attorney client privilege? [*See* 3/4/2004 Trans. at 25-28; 32-33].

31. Did the Bankruptcy Court err in admitting and relying on the testimony of Exide witnesses regarding information disclosed during settlement negotiations pertaining to what Exide may be willing to do and the steps Exide would be willing to take in the event of rejection? [*See* 3/4/2004 Trans. at 37-42].

32. Did the Bankruptcy Court err in admitting and relying on the testimony of certain Exide witnesses regarding Exide's alleged pension payment obligation, when the improper

48

testimony was allegedly based on and reflected in documents Exide failed to produce in discovery? [*See* 3/4/2004 Trans. at 106-108].

33. Did the Bankruptcy Court err in qualifying Exide's consultant as an expert on the issue of how rejection would benefit the bankrupt estate, despite the consultant's failure to provide any incremental or quantitative benefit analysis in his report to support his opinion? [*See* 3/4/2004 Trans. at 132-133].

34. Did the Bankruptcy Court err in admitting and relying on the hearsay testimony of certain Exide witnesses regarding the content of various emails, which were withheld from production in discovery, but allegedly related to sales forecast analyses? [*See* 3/4/2004 Trans. at 179-184; 187; 188-191; 201-202].

35. Did the Bankruptcy Court err in concluding that the Agreement was unambiguous? [*See* 3/5/2004 Trans. at 135-148].

36. Did the Bankruptcy Court err in refusing to consider parol evidence to resolve the ambiguity in the Agreement? [*See* 3/5/2004 Trans. at 135-148].

37. Did the Bankruptcy Court err in concluding that the Agreement did not constitute a sale of the trademark? [*See* 3/5/2004 Trans. at 135-148].

38. Did the Bankruptcy Court err in admitting and relying on Exide Exhibit 401 after Exide failed to designate the document as a trial exhibit? [*See* 3/12/2004 Trans. at 147-148].

39. Did the Bankruptcy Court err by prohibiting the cross-examination of certain Exide witnesses regarding discussions with other Exide employees relating to the alleged reasons for seeking to regain ownership of the Exide trademark? [*See* 3/12/2004 Trans. at 201-202].

SL1 627026v1/008444.00325

40. Did the Bankruptcy Court err by prohibiting the cross-examination of certain Exide witnesses regarding a marketing study on brand strength, which Exide failed to produce in discovery and previously claimed did not exist? [*See* 3/12/2004 Trans. at 203-206].

41. Did the Bankruptcy Court err by prohibiting the cross-examination of certain Exide witnesses regarding whether Exhibit 250 refers to any discussion between Exide's CEO and the Exide board of directors about what Exide would do with the trademark if they succeeded in regaining ownership? [*See* 3/12/2004 Trans. at 213-214].

42. Did the Bankruptcy Court err by prohibiting EnerSys's expert from testifying about whether the EnerSys corporate name was a suitable replacement for the Exide trademark? [*See* 3/12/2004 Trans. at 253-254].

43. Did the Bankruptcy Court err by allowing Exide to cross-examine EnerSys's expert regarding the substance of privileged conversations with EnerSys's legal counsel and another expert retained to testify at trial? [*See* 3/17/2004 Trans. at 90-91; 93-94].

44. Did the Bankruptcy Court err by prohibiting the cross-examination of certain Exide witnesses through the use of deposition testimony? [*See* 3/17/2004 Trans. at 225-228].

45. Did the Bankruptcy Court err in mischaracterizing the testimony of EnerSys's valuation expert and subsequently concluding that the expert was not credible? [*See* 3/26/2004 Trans. at 87-90; 109-114].

46. Did the Bankruptcy Court err in admitting and relying on the testimony and opinion of Exide's expert who testified through the use demonstrative exhibits that had not been disclosed prior to trial and were not were part of any supplemental expert report? [*See* 3/26/2004 Trans. at 116-118].

47. Did the Bankruptcy Court err in admitting and relying on the testimony and opinion of Exide's expert on the subject of product branding beyond the scope of the expert's original qualifications? [*See* 3/26/2004 Trans. at 124-126].

48. Did the Bankruptcy Court err in admitting and relying on the testimony and opinion of Exide's expert in reference to Exhibit 411 on the subject of loss return on historical investment in the brand, beyond the scope of the expert's original qualifications? [*See* 3/26/2004 Trans. at 151-152].

49. Did the Bankruptcy Court err in admitting and relying on the testimony and opinion of Exide's expert regarding his previously undisclosed method for discounting the loss return on historical investment in the brand, but only allowing EnerSys to rebut this new opinion and methodology through a post-trial submission? [*See* 3/26/2004 Trans. at 160-172].

50. Once the Bankruptcy Court determined it was appropriate to reject the Agreement, did it err in concluding that the 2 year transition period requested by Exide was more appropriate than the 5 year transition period requested by EnerSys?

51. Once the Bankruptcy Court determined that a 2 year transition period was appropriate, did it err in ordering such transition period to run from the date of entry of the Rejection Order instead of the date of the final disposition of the matter?

Dated: April 21, 2006

STEVENS & LEE, P.C.

*/s/ Thomas G. Whalen, Jr.*
Thomas G. Whalen, Jr. (No. 4034)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3304
Telecopier: (610) 371-8512
E-mail: tgw@stevenslee.com

- and -

Robert Lapowsky, Esquire
Carl W. Hittinger, Esquire
Neil C. Schur, Esquire
Dean R. Batson, Esquire
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone: (215) 575-0100
Telecopier: (215) 851-0214

*Attorneys for EnerSys Delaware, Inc. f/k/a EnerSys, Inc.*

## CERTIFICATE OF SERVICE

I, THOMAS G. WHALEN, JR., hereby certify that on April 21, 2006, I caused a true and correct copy of *ENERSYS, INC.'S DESIGNATION OF ITEMS FOR RECORD ON APPEAL AND STATEMENT OF ISSUES ON APPEAL* to be served upon the parties listed below in the manner indicated:

*Via Facsimile and Federal Express*
Paul Garcia, Esquire
Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois 60601

*Via Facsimile & Regular Mail*
Mark L. Metz, Esquire
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 2100
Milwaukee, WI 53202

*Via Facsimile and Hand Delivery*
James E. O'Neill, Esquire
Pachulski, Stang, Ziehl, Young, Jones & Weintraub, P.C.
919 North Market Street, Suite 1600
Wilmington, DE 19801

*Via Facsimile & Regular Mail*
Richard S. Cobb, Esquire
Landis Rath & Cobb LLP
919 Market Street, Suite 600
Wilmington, Delaware 19801

*Via Facsimile & Regular Mail*
Mark Kenney, Esquire
U.S. Trustee's Office
844 King Street, Room 2313
Lockbox 35
Wilmington, DE 19801

*Via Facsimile & Regular Mail*
Marcia Landweber Goldstein, Esquire
Troy L. Cady, Esquire
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

*Via Facsimile & Regular Mail*
Fred Hodara, Esquire
Mary R. Masella, Esquire
Akin, Gump, Strauss, Hauer & Feld, LLP
590 Madison Avenue
New York, NY 10022

*Via Facsimile & Regular Mail*
Mark D. Collins, Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

*Via Facsimile & Regular Mail*
David B. Stratton, Esquire
Pepper Hamilton LLP
1201 Market Street, Suite 1600
P.O. Box 1709
Wilmington, DE 19899-1709

*Via Facsimile & Regular Mail*
Douglas P. Bartner, Esquire
Marc B. Hankin, Esquire
Shearman & Sterling
599 Lexington Avenue
New York, NY 10022

***Via Facsimile & Regular Mail***
Laurie Selber Silverstein, Esquire
Potter, Anderson & Corroon, LLP
Hercules Plaza
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951

***Via Facsimile & Federal Express***
Roger P. Furey, Esquire
William Bosch, Esquire
Intellectual Property Law Department
Katten Muchin Zavis Rosenman
1025 Thomas Jefferson Street, N.W.
Washington, D.C. 20007-5201

***Via Facsimile and Federal Express***
Matthew N. Kleiman, Esquire
Matthew N. Kleiman, P.C.
2506 North Clark Street, Suite 307
Chicago, IL 60614


_/s/ Thomas G. Whalen, Jr._
Thomas G. Whalen, Jr.