IN THE UNITED DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: Exide Technologies, *et al*. ) | Bankruptcy Case No. 02-11125 (KJC) |
| ) | (Jointly Administered) |
| EnerSys Delaware, Inc., ) | |
| Appellant ) | Civil Action No. 06-302 (SLR) |
| ) | |
| v. ) | |
| ) | AP 06-33 |
| Exide Technologies, ) | |
| Appellee ) | |

**MOTION OF REORGANIZED EXIDE TECHNOLOGIES TO EXPEDITE APPEAL**

   Reorganized Exide Technologies and its debtor affiliates (collectively, "Exide") hereby move that the appeal (as amended) filed in this matter by EnerSys Delaware, Inc. f/k/a EnerSys, Inc. ("EnerSys") be heard and decided on an expedited schedule (the "Motion"). EnerSys has appealed the Bankruptcy Court's approval of Exide's rejection of certain agreements, including a trademark license for the critically important "Exide" trademark. In support of this Motion, Exide respectfully states as follows:

**BACKGROUND**

**I.  The License**

   1.  Exide is a manufacturer of batteries used to power automobiles, forklifts, telecommunications equipment, and other items. In 1991, Exide entered into a series of agreements with a company that was later renamed EnerSys for the sale of substantially all of Exide's industrial battery division. ("Industrial" batteries are used for applications such as forklifts and telecommunications equipment. Exide retained ownership of its transportation division, which makes batteries for automobiles and other vehicles.) As part of the transaction,

EnerSys received various assets from Exide, including manufacturing plants, equipment, and certain intellectual property rights.

2. After the transaction, Exide wanted to continue using its Exide trademark (the "Exide Mark") that it owned in connection with the automobile and other non-industrial batteries it would continue to make. In turn, EnerSys wanted to use the Exide Mark in connection with the industrial batteries it would make. To accommodate the needs of both parties, Exide granted EnerSys a license to use the Exide Mark in connection with its industrial batteries. This way, Exide retained ownership of the Exide Mark and could use it outside of the industrial battery business, while EnerSys could use the mark within the industrial battery business. Exide's license of the Exide Mark was subject to certain conditions and could be terminated.

3. In 2000, Exide and EnerSys agreed to an early termination of a non-competition agreement. This termination allowed Exide to re-enter the industrial battery business, which it did when it purchased GNB Technologies Inc., in 2000. Since that time, Exide has sold industrial batteries under various brand names. In other words, Exide and EnerSys now compete in the same market; however EnerSys sells its batteries under the Exide Mark. Customers understandably have trouble making the connection that different brands of Exide industrial batteries not bearing the Exide Mark are actually manufactured by Exide, while other industrial batteries bearing the Exide mark are actually produced by a competitor, EnerSys.

## II. The Bankruptcy Case

4. On April 15, 2002, Exide filed for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to section 365 of the Bankruptcy Code, and an earlier order of the bankruptcy court (the "Bankruptcy Court") establishing procedures for rejection of executory contracts, on March 14, 2003, Exide filed a series of

notices (the "Rejection Notices") to reject certain agreements including the Exide trademark license (the "Rejected Agreements") with EnerSys. The Rejected Agreements provided the basis for EnerSys to use the Exide Mark and are at the heart of EnerSys' appeal. The rejection of the Rejected Agreements will resolve customer confusion and allow Exide to once again have full use of its Exide Mark.

5. On April 3, 2006, after extensive litigation and almost three years after Exide filed its Rejection Notices, the Bankruptcy Court authorized Exide's rejection of the Rejected Agreements pursuant to the Bankruptcy Court's Order Granting Debtors' Motion to Reject (Bankruptcy Court Docket No. 5378, the "Rejection Order") and related opinion (Bankruptcy Court Docket No. 5377, the "Opinion"). On April 11, 2006, EnerSys filed a Notice of Appeal of the Rejection Order and a motion to stay the Rejection Order pending the Appeal (the "Stay Motion").

6. On or about June 30, 2006, the Bankruptcy Court entered an Order which, *inter alia*, denied the Stay Motion without prejudice, and established a transition plan (the "Transition Plan") to facilitate the smooth and efficient transition of the Exide Mark from EnerSys back to Exide, and to eliminate (or at least substantially mitigate) the scope and immediacy of the potential damages that might arise therefrom. Pursuant to the Transition Plan, no later than 18 months from April 3, 2006, EnerSys must use a new trademark, and two years after April 3, 2006 Exide may begin using the Exide Mark for industrial batteries.

7. On July 11, 2006, EnerSys filed an Amended Notice of Appeal of the Rejection Order and Order Granting Transition Plan (together with the Notice of Appeal of the Rejection Order, the "Appeal").

8. On May 11, 2006, the Appeal was referred to Appellate Mediation. On July 27,

3

2006, the mediation was conducted, and, on August 3, 2006, a Notice of Completion was filed with the Court reporting that the parties were unable to resolve their dispute in the mediation process.

**RELIEF REQUESTED**

9. By this Motion, Exide requests that this Court expedite the Appeal, including the immediate entry of a briefing schedule and an accelerated schedule for oral argument, if such argument is desired by the Court.

**BASIS FOR RELIEF**

10. Rule 8019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") permits a district court to suspend or modify the normal rules and procedures governing appeals from a bankruptcy court decision and expedite the determination of an appeal. Specifically, Bankruptcy Rule 8019 provides, "[i]n the interest of expediting decision or for other cause, the district court or the bankruptcy appellate panel may suspend the requirements or provisions of the rules in Part VIII, except Rules 8001, 8002 and 8013 and may order proceedings in accordance with its direction." FED. R. BANKR. P. 8019.

11. According to Collier on Bankruptcy, "[t]he primary purpose of Federal Rule of Bankruptcy Procedure 8019 is to give the district courts . . . the power to expedite the consideration of cases that are 'of primary concern to the public or to the litigants'" and "[c]ourts will invoke the power given them by Rule 8019 *if there are unusual time considerations or if unfairness to the litigants would otherwise result*." Lawrence P. King, 10 COLLIER ON BANKRUPTCY ¶ 8019.01 (15th ed. rev. 2006) (citations omitted) (emphasis added). *See also*, *In re Marvel Entm't Group, Inc.*, 209 B.R. 832, 835 (D. Del. 1997) (noting that motion for expedited appeal had been granted); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 171 (D. Del.

4

1991) (granting motion for expedited appeal); *In re Chateaugay Corp.*, 64 B.R. 990, 994-95 (S.D.N.Y. 1986) (noting that motion for expedited appeal had been granted); *In re Island Helicopters, Inc.*, No. 97-CV-4584, 1997 WL 466973, at *5 (E.D.N.Y. 1997) (granting motion for expedited appeal).

12. Granting this Motion will serve the intended purpose of Bankruptcy Rule 8019 and inure to the benefit of both parties, the public and the courts. The Transition Plan sets a reasonable but limited timetable for EnerSys to develop a new brand, revise its labeling, and market and sell its new brand to customers. A protracted appellate review could conflict with the Transition Plan schedule and thereby prejudice both EnerSys and Exide. However, a prompt resolution of the Appeal will allow both parties to meet their obligations under the Transition Plan while still permitting appropriate appellate review of the Rejection Order.

13. Additionally, the case at bar presents more than a private financial dispute. The public is justifiably confused as to who manufactures what product and under what name. The pendancy of this Appeal adds further confusion. As such, a prompt review of the Appeal will ensure that both parties will be in a position to educate customers about their respective brands and resolve any misunderstanding in the marketplace, irrespective of the outcome of the Appeal. Finally, expediting the Appeal will conserve judicial resources and forestall the need for further litigation in connection with the Rejection Order.

**I.   There Are "Unusual Time Considerations" Present Here That Justify An Expedited Appeal.**

14. This case presents unique circumstances that illustrate precisely the type of "unusual time considerations" that warrant an expedited appeal process. In an effort to avoid or minimize harm to EnerSys and reduce confusion in the marketplace, the Bankruptcy Court has carefully imposed a two-year Transition Plan as a component of Exide's rejection of the

trademark license. The two-year clock started ticking on that plan on April 3, 2006. Under the plan, EnerSys must change to a new trademark no later than October 3, 2007. Exide can then recommence use of the Exide Mark for industrial batteries on April 3, 2008. If all appeals are not completed before October 3, 2007, EnerSys will be required to change the trademark it uses on labeling and packaging for some of its products. Thus, granting relief under Rule 8019 will reduce the risk of a conflict between the schedule imposed by the Transition Plan and the time needed to permit appropriate appellate review of the Rejection Order.

II.     **An Expedited Appellate Process Will Best Serve The (Legitimate) Interests Of Both Parties, The Public And The Courts.**

15.     It is evident that EnerSys will benefit from an expedited appeal since EnerSys is the appellant, and since EnerSys has argued vigorously in its Stay Motion filed with the Bankruptcy Court that it will be irreparably harmed if it is forced to change its trademark before its appeal is heard. *See* Emergency Motion of EnerSys Delaware, Inc., f/k/a/ EnerSys, Inc. for a Stay Pending Appeal of the Order Granting Debtors' Motion to Reject (Bankruptcy Court Docket No. 5388), pp. 11-13. The Transition Plan was carefully crafted by the Bankruptcy Court to "mitigate any potential damage and business disruption that EnerSys may suffer as a result of losing the Exide mark." Opinion, p. 41. In granting this Motion, the Court will facilitate implementation of the Transition Plan which, in part, seeks to protect EnerSys. Conversely, any delay in the consideration of the Appeal will frustrate the explicit directive of the Bankruptcy Court and could exaggerate the potential damages to EnerSys that the Transition Plan was specifically designed to prevent.

16.     Exide will benefit from an expedited appeal because further delay will inhibit Exide's efforts to unify its reorganized company under the Exide Mark and eliminate confusion among its customers and prospective customers. Exide filed its Rejection Notices over three

6

years ago, as a financially-distressed company using the mechanisms provided under bankruptcy law to reorganize and turn the company around. Rejection of the trademark license and reclamation of rights to use its Exide Mark on industrial batteries were (and remain) important components of Exide's restructuring marketing strategies. After a protracted litigation process, the Bankruptcy Court issued its ruling, which included the two-year Transition plan. It will be five years from the time Exide sought this critical relief before Exide can begin using the Exide Mark for the industrial side of its business.

17.    Exide continues to face financial challenges as it works to implement its reorganization plans. A final resolution of this trademark matter is important to those efforts. *See, e.g.*, Opinion, p. 26 ("The evidence submitted by Exide demonstrates that brand unification will likely make Exide more competitive."). Any further delay in Exide brand unification has the potential to hinder Exide's efforts to compete, potentially by restricting its full use of the Exide Mark. Consequently, Exide will continue to operate as a "fractured company" until the transition of the Exide Mark has been completed. *See* Opinion, p. 26. Further delay of the transition of the full Exide Mark back to Exide will prolong this fracture, and could potentially further impact Exide's post-bankruptcy plans. Such potential harm could also flow through to creditors of Exide's bankruptcy estate, as they hold equity positions in reorganized Exide pursuant to the confirmed plan of reorganization.

18.    The parties, and the public, also continue to suffer from marketplace confusion that will continue to exist as long as one of Exide's biggest competitors, EnerSys, uses the Exide Mark in direct competition with Exide. As the Bankruptcy Court noted, Exide's customers are confused by Exide currently having to market via non-"Exide" brands. *Id.* As a result, otherwise loyal Exide customers may not use products without the Exide Mark even though

those products are made by Exide, and Exide customers may, mistakenly, believe that Exide does not have the necessary global capabilities. *Id.* Additionally, certain customers have been confused and frustrated that industrial batteries with the Exide Mark are actually not Exide batteries. *Id.* at 27. The Bankruptcy Court recognized that by rejecting the Rejected Agreements "Exide will no longer have to continue with its efforts to reduce confusion (and incur any of the costs associated therewith) . . . ." *Id.* at 27. Thus, both Exide and the public will benefit in important ways if this appellate process is expedited and further delay in the Transition Plan avoided.

19.     The courts will also benefit from an expedited appeal. As the process winds closer to the October 3, 2007 trigger date for EnerSys to change to a new trademark, it can be anticipated that EnerSys may move to stay the Bankruptcy Court's Rejection Order, including the Transition Plan. This will necessitate briefing and possibly hearings at both the District Court and Court of Appeals stages of appeal. And the courts will be placed in the position of considering a stay, possibly on an emergency basis, that would have the effect of undoing the carefully considered Transition Plan that was adopted by the Bankruptcy Court after lengthy deliberation. Although expediting the appeal may not guarantee that a stay motion will not be made by EnerSys, it reduces the likelihood that it will be needed at any stage of the appellate process, and it reduces the need for a prolonged stay in any event.

WHEREFORE, for the reasons stated above, Exide respectfully requests that this Court expedite the Appeal and enter an order (i) setting a briefing schedule; (ii) setting an accelerated schedule for oral argument, if such argument is desired by the Court; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: August 4, 2006

        MATTHEW N. KLEIMAN, P.C.
        Matthew N. Kleiman
        2506 North Clark Street, Suite 307
        Chicago, IL 60614
        Telephone: (312) 543-0412
        Facsimile: (773) 868-4844

        and

        KATTEN MUCHIN ROSENMAN LLP
        Roger P. Furey
        1025 Thomas Jefferson Street, N.W.
        East Lobby, Suite 700
        Washington, DC 20007-5201
        Telephone: (202) 625-3500
        Facsimile: (202) 298-7570

        and

        PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP

        /s/ James E. O'Neill
        Laura Davis Jones (Bar No. 2436)
        James E. O'Neill (Bar No. 4042)
        919 North Market Street, 17th Floor
        Wilmington, DE 19899-8705 (Courier 19801)
        Telephone: (302) 652-4100
        Facsimile: (302) 652-4400

        Co-Counsel for the Reorganized Debtors

IN THE UNITED DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: Exide Technologies, *et al.* | ) Bankruptcy Case No. 02-11125 (KJC)<br>) (Jointly Administered)<br>) |
| EnerSys Delaware, Inc.,<br>            Appellant | ) Civil Action No. 06-302 (SLR)<br>) |
| v. | ) AP 06-33 |
| Exide Technologies,<br>            Appellee | ) |

### AFFIDAVIT OF SERVICE

Tanya Thompson, being duly sworn according to law, deposes and says that she is employed by the law firm of Pachulski Stang Ziehl Young Jones & Weintraub LLP, counsel for the Reorganized Debtor, in the above-captioned action, and that on the 5th day of August, 2006, she caused a copy of the following document(s) to be served upon the attached service list(s) in the manner indicated:

      MOTION OF REORGANIZED EXIDE TECHNOLOGIES
      TO EXPEDITE APPEAL.

                                                  Tanya Thompson

Sworn to and subscribed before
me this 5th day of August, 2006

_____
Notary Public
My Commission Expires: 2-20-08

   DIANE K. POTTS
    NOTARY PUBLIC
  STATE OF DELAWARE
My Commission Expires Feb. 20, 2008

25014-001\DOCS_DE:120249.1

Exide Technologies – EnerSys Service List
Case No. 02-11125 (KJC)
Document No. 72995
06 – HAND DELIVERY
12 – FIRST CLASS MAIL

**Hand Delivery**
(Counsel to EnerSys, Inc.)
Thomas G. Whalen, Jr., Esq.
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801

**Hand Delivery**
(U.S. Trustee)
Mark Kenney, Esq.
Office of the United States Trustee
844 King Street, Room 2207
Lockbox 35
Wilmington, DE 19801

**Hand Delivery**
(Counsel to Prepetition Secured Lenders,
Credit Suisse First Boston)
Mark D. Collins, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801

**Hand Delivery**
(Counsel to Post Petition Secured Lenders,
Citicorp USA, Inc.)
Richard S. Cobb, Esq.
Landis Rath & Cobb LLP
919 North Market Street, Suite 600
Wilmington, DE 19801

**Hand Delivery**
(Counsel to Post Confirmation Committee of
Unsecured Creditors)
David B. Stratton, Esq.
David M. Fournier, Esq.
Pepper Hamilton LLP
1313 Market Street, Suite 5100
Wilmington, DE 19801

**Hand Delivery**
(Counsel to Official Committee of Equity
Security Holders)
Laurie Selber Silverstein, Esq.
Potter Anderson & Corroon LLP
1313 North Market Street, 6th Floor
Wilmington, DE 19801

**FIRST CLASS MAIL**
(Counsel to EnerSys, Inc.)
Robert Lapowsky, Esq.
Carl W. Hittinger, Esq.
Stevens & Lee, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA 19103-1702

**FIRST CLASS MAIL**
(Counsel to EnerSys, Inc.)
John J. Miravich, Esq.
Stevens & Lee, P.C.
111 North Sixth Street
Reading, PA 19063

**FIRST CLASS MAIL**
(Counsel to the Reorganized Debtor)
Matthew N. Kleiman, Esq.
Matthew N. Kleiman, P.C.
2506 North Clark Street, Suite 307
Chicago, IL 60614

**FIRST CLASS MAIL**
(Counsel to the Reorganized Debtor)
Paul R. Garcia, Esq.
Michelle A. H. Francis, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

**FIRST CLASS MAIL**
(Counsel to the Reorganized Debtor)
Roger P. Furey, Esq.
Katten Muchin Rosenman LLP
1025 Thomas Jefferson Street, N.W.
East Lobby, Suite 700
Washington, DC 20007-5201

**FIRST CLASS MAIL**
(Counsel to the Reorganized Debtor)
John P. Sieger, Esq.
Matthew A. Olin, Esq.
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, IL 60661-3693

**FIRST CLASS MAIL**
(Counsel to Prepetition Secured Lenders,
Credit Suisse First Boston)
Douglas P. Bartner, Esq.
Marc B. Hankin, Esq.
Shearman & Sterling
599 Lexington Avenue
New York, NY 10022

**FIRST CLASS MAIL**
(Counsel to Post Petition Secured Lenders,
Citicorp USA, Inc.)
Marcia Landweber Goldstein, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

**FIRST CLASS MAIL**
(Counsel to Post Confirmation Committee of
Unsecured Creditors)
Fred S. Hodara, Esq.
Mary R. Masella, Esq.
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
590 Madison Avenue
New York, NY 10022

**FIRST CLASS MAIL**
(Counsel to Post Confirmation Committee of
Creditors)
Cheryl A. Falvey, Esq,
Gabrielle Duvall, Esq.
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036

**FIRST CLASS MAIL**
(Reorganized Debtor)
Holly Pritchard, Esq.
Barbara Hatcher, Esq.
Exide Technologies
13000 Deerfield Parkway, Building 200
Alpharetta, GA 30004

**FIRST CLASS MAIL**
(Mediator)
J. Richard Tucker, Esq.
Maron & Marvel, P.A.
1300 North Broom Street
Wilmington, DE 19806