IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EXIDE TECHNOLOGIES, et al.,<br><br>      Debtors. | ) <br> ) Chapter 11 <br> ) Bk. No. 02-11125 (KJC) <br> ) <br> ) |
| ENERSYS, DELAWARE, INC.,<br><br>      Appellant,<br><br>      v.<br><br>EXIDE TECHNOLOGIES,<br><br>      Appellee. | ) <br> ) <br> ) <br> ) <br> ) Civ. No. 06-302-SLR <br> ) Adv. No. 06-33 (KJC) <br> ) <br> ) <br> ) |

**MEMORANDUM ORDER**

At Wilmington this 27th day of February, 2008, having reviewed the appeal filed

by EnerSys Delaware, Inc. ("EnerSys"), and the papers filed in connection therewith;

IT IS ORDERED that the appeal is denied. The decision of the bankruptcy court

dated April 3, 2006 is affirmed, for the reasons that follow.

1. **Standard of review.** This court has jurisdiction to hear an appeal from the

bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues

on appeal, the court applies a clearly erroneous standard to the bankruptcy court's

findings of fact and a plenary standard to that court's legal conclusions. See Am. Flint

Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999). With

mixed questions of law and fact, the court must accept the bankruptcy court's "finding of

historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank, N.A. v. Metro Commc'ns, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (quoting Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. In re Hechinger, 298 F.3d 219, 224 (3d Cir. 2002); In re Telegroup, 281 F.3d 133, 136 (3d Cir. 2002).

2. **Background facts.** On June 10, 1991, Exide Technologies ("Exide") sold substantially all of its industrial battery business to EnerSys pursuant to a series of agreements. The assets Exide sold to EnerSys as part of the 1991 transaction included physical manufacturing plants, equipment and certain items of intellectual property. In addition, Exide licensed its EXIDE trademark[1] to EnerSys, subject to certain obligations (e.g., limiting use to the industrial market) and subject to termination under certain circumstances (e.g., if EnerSys used the EXIDE trademark outside the industrial market). From 2000, when Exide returned to the North American industrial battery market, until Exide filed for bankruptcy protection in 2002, Exide failed to unify its image and brand under a single mark and, instead, was forced to compete directly against EnerSys, a company that had the right to use Exide's own name.

3. On April 15, 2002, Exide initiated Chapter 11 bankruptcy proceedings.

_____

[1]According to Exide, the EXIDE trademark was first introduced in 1900 and has been critical to Exide and Exide's branding strategy since then.

Pursuant to 11 U.S.C. § 365, Exide thereafter filed a series of notices to reject certain agreements between Exide and Yuasa Battery (America), Inc., the predecessor in interest of EnerSys.  These rejected agreements include four agreements[2] relating to the licensing of the EXIDE trademark, which agreements were deemed a "fully integrated, unambiguous document" (and which will be referred to collectively as "the Integrated Agreement") by the bankruptcy court.  Over the objection of EnerSys, the bankruptcy court authorized Exide's rejection of the Integrated Agreement in its April 3, 2006 opinion and order.

    4. **Analysis.**  The bankruptcy court, in a well reasoned and detailed opinion, concluded that the Integrated Agreement was an executory contract subject to rejection under the auspices of § 365.  There is no error of fact or law in that conclusion.

    a.  The four agreements, properly deemed to be "integrated," were all rejected.

    b.  The Integrated Agreement constituted an executory contract.  More specifically, the Integrated Agreement imposed ongoing obligations on the part of both parties[3] and the failure to perform these obligations would constitute a material breach

---

[2]The Trademark and Trade Name License Agreement dated June 10, 1991 ("the Trademark License Agreement"); (b) the Asset Purchase Agreement dated June 10, 1991 ("the Asset Purchase Agreement"); (c) the Administrative Services Agreement dated June 10, 1991 ("the Services Agreement"); and (d) a letter agreement dated December 27, 1994 between Ernest J. Choquette and Bernard F. Stewart ("the Letter Agreement").

[3]See Bk. No. 02-11125, D.I. 5377 at 6-7.

excusing performance of the other party.[4]  For these same reasons, it is clear from the language of the Integrated Agreement that the EXIDE trademark was licensed, not assigned.

c.  In the event of rejection of an executory contract, the holder of such contract is left with a claim for rejection damages, unless provided with additional protection under 11 U.S.C. § 365(n).  Given that trade names, trademarks, and other proprietary marks are expressly excluded from the definition of "intellectual property" in § 365(n), EnerSys is left with only a claim for breach.  See In re HQ Global Holdings, Inc., 290 B.R. 507, 513 (Bankr. Del. 2003).  As a result of the rejection, therefore, Exide's obligation to allow EnerSys to use the EXIDE trademark was extinguished.  Id.

d.  Given the unusual situation at bar, that is, a debtor forced to compete against its own trademark, there is more than sufficient evidence in the record to support the bankruptcy court's business judgment finding.

5.  **Conclusion.**   For the reasons stated, the appeal is denied and the decision of the bankruptcy court affirmed.

_____
United States District Judge

---

[4]For example, see paragraphs 2, 5, 8 and 12 of the Trademark License Agreement.